UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>ADAN JAMES CORONA, a/k/a<br>ACE BOOGIE,<br><br>　　　　Defendant. | CR. 17-50049-03-JLV<br><br>ORDER |

A grand jury indicted Adan James Corona, together with three other defendants, in a multiple count superseding indictment. (Docket 129). Mr. Corona is charged with count I: first degree premediated murder in violation of 18 U.S.C. §§ 1111(a), 2, 1152 and 1153; first degree felony murder in violation of 18 U.S.C. §§ 1111(a), 2, 1152 and 1153; count III: conspiracy to commit assault in violation of 18 U.S.C. §§ 113(a)(3), 1152, 1153 and 371; count IV: use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii); count V: brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and count VI: prohibited person in possession of ammunition in violation of 18 U.S.C. § 922(g). Id. Mr. Corona filed a motion "to suppress statements he made to law enforcement as well as the results of the search of an automobile in which he was a passenger." (Docket 122).

The motion to suppress was referred to United States Magistrate Judge Daneta Wollmann pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order of March 9, 2015. An evidentiary hearing was held on August 29, 2018. (Docket 247). Following post-hearing briefing, Magistrate Judge Wollmann issued a report and recommendation ("R&R") on defendant's motion to suppress. (Docket 284). The magistrate judge recommended defendant's "motion to suppress be denied in full." Id. at p. 18. The defendant timely filed his objections to the R&R. (Docket 288).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.; see also Fed. R. Crim. P. 59(b)(3).

The court completed a *de novo* review of those portions of the R&R to which objections were filed. For the reasons stated below, the court finds the R&R is an appropriate application of the law to the facts presented by the parties at the suppression hearing. For the reasons stated below, the defendant's objections are overruled and the R&R is adopted in its entirety.

**DEFENDANT'S OBJECTIONS**

Defendant's objections to the R&R are summarized as follow:

1. Mr. Corona objects generally to all factual findings and legal conclusions made by the magistrate judge.

2. Mr. Corona objects to the magistrate judge's finding that Officers Garcia and Kay were credible.

3. The magistrate judge erred as a matter of law by finding Mr. Corona had no standing to object to the search of the vehicle.

4. Mr. Corona should have been advised of his Miranda[1] rights prior to being subjected to questioning during the second contact.

5. The magistrate judge erred in finding Mr. Corona was not in custody during the second contact questioning.

6. The magistrate judge erred in finding Mr. Corona was not interrogated during the second contact.

7. The magistrate judge erred in determining that, because Officer Garcia's questions were related to "dispelling his suspicions that the vehicle contained contraband or firearms," the questions during the second contact were not part of an interrogation. (Dockets 284 at p. 15 & 288 at p. 3).

8. Mr. Corona objects to the magistrate judge's finding his statements during the second contact were admissible under the public safety exception to Miranda.

(Docket 288). "For the foregoing reasons," Mr. Corona argues "the district court should not accept the magistrate judge's R&R, and should grant Corona's Motion." Id. at p. 4.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

Each of defendant's objections will be separately addressed.

**ANALYSIS**

The court completed a *de novo* review of the transcript of the suppression hearing and the video and audio recordings ("video recording") produced by Officer Kay's body camera and the body camera of an unidentified Denver police officer. (Docket 247 and suppression hearing Exhibits 1 & 2). Unless otherwise indicated, the court's findings of fact are consistent with the findings made by the magistrate judge.

1. MR. CORONA OBJECTS GENERALLY TO ALL FACTUAL FINDINGS AND LEGAL CONCLUSIONS MADE BY THE MAGISTRATE JUDGE.

"Congress has mandated that the district court give *de novo* review to those portions of a Magistrate's report and recommendation to which objections are made." Belk v. Purkett, 15 F.3d 803, 815 (8th Cir. 1994) (referencing 28 U.S.C. § 636(b)(1)). "There is a court-created exception in some circuits: '. . . [T]he district court need not conduct *de novo* review when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations.'" Id. (citing Johnson v. Knable, 934 F.2d 319 (4th Cir. 1991) (unpublished opinion) (citing Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982); United States v. Merz, 376 U.S. 192, 199, 84 (1964); Pendleton v. Rumsfeld, 628 F.2d 102, 105-06 (D.C. Cir. 1980)). "There is language in an Eighth Circuit case which indicates this Circuit's approval of such an

4

exception."  Id. (referencing Branch v. Martin, 886 F.2d 1043 (8th Cir. 1989) ("In the present case, plaintiff's objections to the magistrate's factual conclusions were timely filed and specific enough to trigger *de novo* review. See, e.g., Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984) (per curiam) (no *de novo* review if objections are untimely or general)").  "[D]e novo review is not required 'when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations.' "  Hudson v. Gammon, 46 F.3d 785, 786 (8th Cir. 1995) (citing Belk, 15 F.3d at 815) (citations omitted).

The court will address Mr. Corona's specific objections to the R&R as they are "certainly definite enough to require de novo review."  Id. (citing Belk, 15 F.3d at 815).  The court is not compelled to evaluate defendant's generalized and conclusory objection.

Defendant's first objection to the R&R is overruled.

2.  MR. CORONA OBJECTS TO THE MAGISTRATE JUDGE'S FINDING OFFICERS GARCIA AND KAY WERE CREDIBLE.

Mr. Corona argues the officers' "sworn testimony was inconsistent with, or contradicted by, the video recording of the arrest."  (Docket 288 at p. 1) (referencing Suppression Hearing Exhibit 1).  He contends that "[o]ne example of false information attested to by Garcia and relied upon by the magistrate judge involved the frisking and handcuffing of Corona. . . . Garcia testified on direct that Corona was initially subject to a simple officer safety frisk, but then,

5

only after Corona acted suspiciously, was Corona handcuffed and placed in a police vehicle for pre-Miranda questioning." Id. (referencing Docket 247 at pp. 5 & 11). Mr. Corona submits "[t]his rendition of events . . . adopted by the magistrate court" is contrary to Officer Kay's body camera video. Id. He argues "[t]he video . . . shows Garcia approaching Corona, removing him from the car, frisking him and then immediately, forcibly putting handcuffs on him and pushing him on to the trunk of the car." Id. at pp. 1-2 (referencing Exhibit 1 at 3:45).

Mr. Corona had three definitively separate contacts with Officer Garcia. The first contact occurred while Mr. Corona was still seated in the backseat of the vehicle ("the first contact"). (Docket 284 at pp. 3-4). The second contact occurred when Mr. Corona was asked to step out of the vehicle, was patted down for weapons, was placed in handcuffs and walked back to the patrol car where he was placed in the rear of the officers' patrol car ("the second contact"). Id. at p. 5. The third contact occurred while Mr. Corona was still in the rear of the patrol car but after the firearm was physically discovered in the vehicle ("the third contact").[2] Id. at p. 6.

Having reviewed Officer Kay's body camera video, the court rejects defendant's summary of Officer Garcia's second contact with Mr. Corona. Having learned Mr. Corona had initially given Officer Garcia a false name, the

---

[2]Prior to any questions being asked during the third contact, Mr. Corona waived his Miranda rights. (Docket 247 at p. 17:11-13).

officer's request that the defendant step out of the vehicle, the Terry[3] frisk and placing Mr. Corona in handcuffs was neither forceful nor overbearing. "Placing [Mr. Corona] in handcuffs was a reasonable response to the situation in order to protect the officers' personal safety and to maintain the status quo." United States v. Martinez, 462 F.3d 903, 907 (8th Cir. 2006).

The magistrate judge is entitled to make observations and judgments about witness credibility. "A credibility finding made by a magistrate judge 'after a hearing on the merits of a motion to suppress is virtually unassailable on appeal.'" United States v. Shafer, 608 F.3d 1056, 1065 (8th Cir. 2010) (quoting United States v. Starr, 533 F.3d 985, 995 (8th Cir. 2008) (quoting United States v. Frencher, 503 F.3d 701, 701 (8th Cir. 2007)). The magistrate judge considered the officers' testimony along with the content of the video recordings. Following a *de novo* review of the hearing transcript and the video recordings, the court concludes the magistrate judge properly weighed the credibility of the officers' testimony.

Defendant's second objection to the R&R is overruled.

3. THE MAGISTRATE JUDGE ERRED AS A MATTER OF LAW BY FINDING MR. CORONA HAD NO STANDING TO OBJECT TO THE SEARCH OF THE VEHICLE.

Defendant contends "other than Corona's statements, there was no basis offered or existent that justified that search." (Docket 288 at p. 2). He argues

---

[3]Terry v. Ohio, 392 U.S. 1 (1968).

"[t]he violation of Corona's Fifth Amendment right led to the baseless, unjustified search. And, Corona claimed ownership of the item seized from within the vehicle." Id. Seized from the vehicle in which Mr. Corona had been a passenger was a handgun found in the "rear pouch of the driver's seat." (Docket 247 at p. 17:5).

"Fourth Amendment rights are personal rights that may not be asserted vicariously. An individual asserting Fourth Amendment rights must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." United States v. Barragan, 379 F.3d 524, 529 (8th Cir. 2004) (internal citation and quotation marks omitted). "The defendant moving to suppress bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search." United States v. Russell, 847 F.3d 616, 618 (8th Cir. 2017) (internal quotation marks omitted). "Generally, a mere passenger does not have standing to challenge a vehicle search where he has 'neither a property nor possessory interest in the automobile.' " Id. (quoting United States v. Anguiano, 795 F.3d 873, 878 (8th Cir. 2015)).

The magistrate judge found Mr. Corona presented no evidence to support a conclusion he "had an ownership interest in the vehicle" or "he had a reasonable expectation of privacy in the vehicle and was anything more than a mere passenger." (Docket 284 at p. 7) (referencing Barragan, 379 F.3d at 530; Anguiano, 795 F.3d at 879). The magistrate judge found that as a "mere

passenger," Mr. Corona has not articulated any reasonable Fourth Amendment expectation of privacy in the vehicle and he "has no standing to challenge the search" of the vehicle.  Id. (referencing Rakas v. Illinois, 439 U.S. 128, 143 (1978) ("[T]o claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.").  Mr. Corona's Fifth Amendment rights are not implicated in the search of the vehicle.

Defendant's third objection to the R&R is overruled.

4. MR. CORONA SHOULD HAVE BEEN ADVISED OF HIS MIRANDA RIGHTS PRIOR TO BEING SUBJECTED TO QUESTIONING DURING THE SECOND CONTACT.

The only questions asked of Mr. Corona during the first contact were for his name and date of birth.  (Docket 284 at p. 4).  While Mr. Corona remained in the backseat of the subject vehicle, Officer Garcia ran a computer check through NCIC on the name Jonathan Rojas.  Id.; see also Docket 247 at p. 9:20.  The search came back "no record found."  (Docket 284 at p. 4) (referencing Docket 247 at p. 10:2).  Using a Denver Police Department in-house program, Officer Garcia ran the same search.  Id.  This search brought up "a similar name . . . with a different date of birth."  (Docket 247 at p. 10:4-5).  Officer Garcia was able to use the program "to pull up that mug web and it was obviously not the Defendant."  Id. at p. 10:5-7.  At that point, Officer Garcia "believed that he [the defendant] was lying about his identity . . . ."  Id.

at p. 10:8-9. Officer Garcia testified that in his experience people lie about their identity because "they either have warrants or some other reason that they don't want us to know their ID." Id. at p. 10:10-12.

Before approaching the vehicle a second time, Officer Garcia concluded he was going to remove Mr. Corona, handcuff him, pat him down for weapons and take him back to the patrol car.

> Given the circumstances of my initial observations with the Defendant, being extremely nervous, in the backseat of the vehicle, the area that we were in, which is heavily populated with gang members and multiple gang-related shootings, motivated crimes, and we observed some initial tattoos on the approach to the vehicle -- which I believed he could possibly be a gang member. And like I said, walking up during the initial observations, he was looking around, he was nervous, he was fidgeting, and the fact that I felt he was lying about his identity, we were going to pull him out of the vehicle.

Id. at pp. 10:22-11:8. Once Mr. Corona was out of the vehicle, he was patted down for weapons and placed in handcuffs to detain him. Id. at p. 11:16-22.

On the way back to the patrol car, Officer Garcia asked the defendant for his name and indicated the officer felt the defendant had lied initially about his name. Id. at p. 12:10-12. At this point, the defendant "said that his name was Adan Corona." Id. at p. 12:12-13. Once situated in the patrol car, Mr. Corona indicated he had some outstanding warrants. Id. at p. 13:12-13. Based on Mr. Corona's earlier evasive conduct, Officer Garcia asked if there were drugs or firearms in the car. Id. at p. 13:18-19. Because of Mr. Corona's evasive stare and lack of an answer to the question and the officer's

concern because of the presence of a small child in the subject vehicle, Officer Garcia asked a second time "if there was a firearm in the car." Id. at p. 13:23-24. This time Mr. Corona acknowledged there was a firearm in the car. Id. at p. 13:24-25. As the magistrate judge noted, it was only five minutes and 20 seconds after the stop of the vehicle that Officer Garcia notified Officer Kay and other backup officers of the presence of a firearm in the vehicle. (Docket 284 at p. 5) (referencing Suppression Exhibit 1 at 5:20).

Mr. Corona does not claim Officer Garcia should have given him his Miranda rights before initiating the discussion which occurred during the first contact. (Docket 288 at p. 2). Rather, Mr. Corona argues he should have been advised of Miranda rights before the second contact occurred. Id. at pp. 2-3. He contends that "because the purpose of detaining, seizing and interrogating Corona was to obtain evidence related to drugs or guns[,]" he "should have been advised of his Miranda rights" before Officer Garcia initiated "this interrogation." Id.

The magistrate judge found:

> Officers Garcia and Kay were justified in expanding the scope of the initial traffic stop by removing Mr. Corona from the vehicle, patting him down, and taking him to the patrol vehicle for further questioning. Both officers were experienced members of the Denver Gang Bureau and were knowledgeable about gang activity in the area. Based on the officers' own experience with gangs, and Mr. Corona's possible false identification, nervous behavior, evasive answers, tattoos, and clothing, it was reasonable for the officers to suspect Mr. Corona was affiliated with a gang and involved in criminal activity. . . . It was further reasonable for Officer Garcia to conduct a pat-down search of Mr. Corona based on his experience

11

> that gang members often carry firearms. . . . The scope and the duration of the stop was strictly limited to investigating whether there was contraband in the vehicle and then finding the weapon . . . . The officers operated quickly and efficiently: Officer Kay found the firearm approximately eight minutes after initiating the traffic stop.

(Docket 284 at p. 11) (referencing United States v. Chavez Loya, 528 F.3d 546, 553 (8th Cir. 2008); Knowles v. Iowa, 525 U.S. 113, 118 (1998); Florida v. Royer, 460 U.S. 491, 500 (1983)).  Based on these findings, the magistrate judge found "the stop was reasonably limited in scope and duration, and the officers' conduct lawfully expanded the scope of the investigation while maintaining the status quo and protecting officer safety."  Id. at pp. 11-12 (referencing United States v. Sharpe, 470 U.S. 675, 685 (1985); United States v. Navarrete–Barron, 192 F.3d 786, 790 (8th Cir. 1999) (officers may take any steps reasonably necessary to protect their safety and maintain the status quo)).

"A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation.  The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop."  Arizona v. Johnson, 555 U.S. 323, 333 (2009).  "An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."  Id.

The evolving circumstances during the stop justified placing Mr. Corona in handcuffs and asking the questions about drugs and firearms in the car. United States v. Martinez, 462 F.3d 903, 907 (8th Cir. 2006) ("This court has previously held that use of handcuffs can be a reasonable precaution during a Terry stop to protect their safety and maintain the status quo."). "[C]onfining a potentially dangerous suspect to a patrol car while checking his identification was not tantamount to an arrest." Id. (referencing United States v. Lego, 855 F.2d 542 (8th Cir. 1988)).

The magistrate judge found the time spent by Officer Garcia during the second contact with Mr. Corona did not unduly expand the duration of the stop. (Docket 284 at p. 11). With three other adults and a child remaining unrestrained in the subject vehicle, Officer Garcia was authorized to ask about firearms in the car as they posed a potential threat not only to those civilians but to the law enforcement officers outside the vehicle. The Miranda safeguards did not apply when Mr. Corona responded to Officer Garcia's questions. The magistrate judge properly analyzed the issue and applied the law accordingly. Id. at pp. 12-15 (citing Oregon v. Mathiason, 429 U.S. 492, 495 (1977); Royer, 460 U.S. at 500; Navarrete–Barron, 192 F.3d at 790).

Defendant's fourth objection to the R&R is overruled.

5. THE MAGISTRATE JUDGE ERRED IN FINDING MR. CORONA WAS NOT IN CUSTODY DURING THE SECOND CONTACT QUESTIONING.

The magistrate judge found "Mr. Corona was neither in custody nor interrogated for purposes of Miranda when Officer Garcia questioned him in the patrol vehicle. First, Officer Garcia's steps to secure the scene and continue the investigation did not render Mr. Corona in custody for purposes of Miranda." (Docket 284 at p. 14) (referencing United States v. Fisher, 364 F.3d 970, 973 (8th Cir. 2004); United States v. Pelayo-Ruelas, 345 F.3d 589, 592 (8th Cir. 2003); United States v. McGauley, 786 F.2d 888, 890 (8th Cir. 1986)). "Second," the magistrate judge found "Officer Garcia's questions did not constitute interrogation because they were directed at confirming Mr. Corona's identity and dispelling his suspicions that the vehicle contained contraband or firearms." Id. at p. 15 (referencing Pelayo-Ruelas, 345 F.3d at 592).

Mr. Corona objects to these findings and contends "[h]e was removed from a car, frisked, forcibly handcuffed, pushed on to a car, then taken to Garcia's patrol car. Corona was subject to physical restraint tantamount to formal arrest at all times during his interrogation by Garcia." (Docket 288 at p. 3).

Having reviewed Suppression Hearing Exhibit 1, the video recording originating from Officer Kay's body camera, the court finds Mr. Corona was neither forcibly handcuffed nor forcibly pushed by Officer Garcia into the car at the time of the first contact. Officer Garcia in a non-threatening manner

14

asked Mr. Corona to exit the vehicle and explained why handcuffs were going to be applied. Once Mr. Corona was outside the vehicle, the officer placed his free hand on the Mr. Corona's back and motioned him to lean against the vehicle while the handcuffs were applied and the pat-down occurred.

Mr. Corona's status did not change during the second contact. No evidence was presented at the suppression hearing which would require the court to classify the defendant as in custody for <u>Miranda</u> purposes. The R&R properly analyzes the issue and correctly applies the law in concluding Mr. Corona was not in custody during the second contact.

Defendant's fifth objection to the R&R is overruled.

6. THE MAGISTRATE JUDGE ERRED IN FINDING MR. CORONA WAS NOT INTERROGATED DURING THE SECOND CONTACT.

As stated above, the magistrate judge concluded Mr. Corona was "neither in custody nor interrogated for purposes of <u>Miranda</u> when Officer Garcia questions him in the patrol vehicle." (Docket 284 at p. 14). The magistrate judge supported this conclusion by the findings articulated above, as well as additional findings set forth in the R&R. <u>Id.</u>

Mr. Corona contends "[t]his conclusion is not supported by the record." (Docket 288 at p. 3). He contends the magistrate judge erred because "[t]he questions put to Corona were not general, but instead were specific questions about discrete criminal activities that were actively being investigated." <u>Id.</u>

15

For the reasons already discussed above, Mr. Corona's view of the evidence is rejected. The court adopts the magistrate judge's findings. The magistrate judge properly concluded Mr. Corona was not interrogated during the second contact.

Defendant's sixth objection to the R&R is overruled.

7. THE MAGISTRATE JUDGE ERRED IN DETERMINING THAT, BECAUSE OFFICER GARCIA'S QUESTIONS WERE RELATED TO "DISPELLING HIS SUSPICIONS THAT THE VEHICLE CONTAINED CONTRABAND OR FIREARMS," THE QUESTIONS DURING THE SECOND CONTACT WERE NOT PART OF AN INTERROGATION.

Defendant's seventh objection is simply a rehash of his earlier objections. For the reasons stated above, Mr. Corona was not subject to an interrogation during the second contact.

Defendant's seventh objection to the R&R is overruled.

8. MR. CORONA OBJECTS TO THE MAGISTRATE JUDGE'S FINDING HIS STATEMENTS DURING THE SECOND CONTACT WERE ADMISSIBLE UNDER THE PUBLIC SAFETY EXCEPTION TO MIRANDA.

The magistrate judge concluded that "even if Mr. Corona was subjected to a custodial interrogation, his statements would be admissible under the public safety exception to Miranda articulated in New York v. Quarles, 467 U.S. 649 (1984)." (Docket 284 at p. 15). Analyzing Quarles, the magistrate judge concluded the public safety exception is "an objective standard: the exception applies when 'police officers ask questions reasonably prompted by a concern for the public safety.' . . . It does not apply to 'questions designed solely to elicit

16

testimonial evidence from a suspect.'" Id. at pp. 15-16 (citing Quarles, 467 U.S. at 656 & 659).

The magistrate judge found:

> Officers Garcia and Kay did in fact have specific information creating a public safety concern. First, and significantly, both officers have years of experience on the gang bureau patrolling the high-crime neighborhood in which the stop occurred. Based on that extensive experience with heavy gang activity in the area, the officers knew many gang members often carry firearms and/or drugs. The officers developed an immediate and reasonable suspicion that Mr. Corona was affiliated with a gang, leading to a fear he or others in the vehicle were armed. The presence of three other unsecured individuals in the vehicle and one toddler, combined with the officers' knowledge about gang members carrying firearms, created a real and imminent risk of danger to the public and the officers themselves. Officer Garcia acted quickly and limited his questioning to whether there was a firearm or contraband in the Acura.

Id. at p. 17. The magistrate judge concluded "[g]iven all these factors, the court finds that Officer Garcia's questioning was reasonably prompted by a concern for public safety and was designed for that purpose." Id. (referencing Quarles, 467 U.S. at 656, 659).

Mr. Corona argues "the public safety exception does not excuse the absence of Miranda warnings in this case." (Docket 288 at p. 4). He contends Officer Garcia only questioned the defendant "to obtain testimonial evidence as to the existence of guns or drugs." Id.

The court adopts the magistrate judge's evaluation of the evidence in this case. It is clear from Officer Garcia's testimony that his primary purpose was public safety when he asked Mr. Corona about the presence of firearms in the

17

vehicle.  With three adults and a child in the subject vehicle, Officer Garcia was, under the circumstances of this case, entitled to ask about firearms in the car.  Firearms in this unsecured and public setting posed a potential threat to law enforcement and the occupants of the vehicle.

Defendant's eighth objection to the R&R is overruled.

**ORDER**

Based on the above analysis, it is

ORDERED that defendant's objections to the magistrate judge's report and recommendation (Docket 288) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation (Docket 284) is adopted in full.

IT IS FURTHER ORDERED that defendant's motion to suppress (Docket 122) is denied.

Dated February 25, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE